IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

WILLIAM CRAWLEY, JR.                                          PLAINTIFF

VS.                           CIVIL ACTION NO. 5:08-cv-188(DCB)(JMR)

CITY OF VICKSBURG, LAURENCE
LEYENS, IN HIS UNOFFICIAL AND
OFFICIAL CAPACITY AS MAYOR, AND
SIDNEY H. BEAUMAN, IN HIS UNOFFICIAL
AND OFFICIAL CAPACITIES AS ALDERMAN                          DEFENDANTS

MEMORANDUM OPINION AND ORDER

This cause is before the Court on the defendants' motion for summary judgment **(docket entry 38)**, to which no response has been filed by the plaintiff. The plaintiff was granted two extensions of time to respond, the last of which expired on August 17, 2009. In addition, the Court ordered the plaintiff show cause, if any, for his failure to respond to the defendants' motion for summary judgment. To date, no response to the Order has been filed. The Court now proceeds to the merits of the defendants' motion. Having carefully considered the defendants' motion and memorandum, the plaintiff's complaint and motion to amend complaint **(docket entry 45)**, the defendants' response to the motion to amend, the entire record in this case, and the applicable law, the Court finds as follows:

The plaintiff, William Crawley, Jr. ("Crawley"), a black male, was hired by defendant the City of Vicksburg ("the City") on September 20, 1993 as a Laborer in the Vicksburg Water Department.

Pl. Dep. at 32. On May 8, 1996, Crawley was promoted to Foreman. During the majority of Crawley's tenure, Don Robinson, who is white, was the Head Supervisor over the water department. Id. at 33. Eugene Gibbs, who is African American, was the assistant supervisor. Id. at 34. On November 14, 2001, Crawley sent the City of Vicksburg a letter detailing numerous complaints against his supervisor, Robinson. Crawley claimed that Robinson had mistreated him and that Robinson was guilty of illegally using city property for his personal use. Letter of 11/14/01. Crawley also complained about his assistant supervisor, Eugene Gibbs. Crawley complained that Gibbs told other water department employees that Gibbs was "going to work the hell out of me" and that Gibbs was "harder on me, put press[ure] on me trying to make me quit." Id. Crawley also complained that "Don [Robinson] give[s] me 75% of the work loaded [sic] and when he isn't there Gibbs does the same thing," and that Gibbs and Robinson were trying to "fire me." Id.

As a result of Crawley's complaints regarding Robinson's illegal activities, the City notified the State Auditor's Department and an investigation was conducted into Robinson's activities at the water department. Robinson was eventually charged with violation of federal criminal statutes and pled guilty. See U.S. v. Robinson, Criminal Docket No. 5:02-cr-13, United States District Court for the Southern District of Mississippi. Gibbs replaced Robinson as the Supervisor of the

2

water department.

In April of 2002, Crawley sent another letter to the City complaining that he and Gibbs were the only water department employees who had to be on-call for 24 hours. Letter from W. Crawley. According to Crawley, once the City was made aware of this it "took care of it right away." Pl. Dep. at 45.

After Robinson was convicted and Gibbs was promoted to Head Supervisor, the City took applications to fill the Assistant Supervisor position vacated by Gibbs. Id. at 48. Several water department employees applied for the position, including Carlo Glass, Harold "Dane" Lovell, and William Crawley. Id. at 50. In 2002, Lovell received the promotion to Assistant Supervisor. Id. at 48. Shortly thereafter, Crawley filed a "Motion of Appeal" with the City regarding the promotion of Lovell. In this document, Crawley complained of "discrimination" and accused Lovell of being Robinson's "right hand man" when Robinson was illegally using city property for his personal gain. See Motion of Appeal. The defendants state that the City investigated the plaintiff's allegations and determined there was no foundation to his allegation of discrimination. The City could not find any proof that Lovell had participated in Robinson's illegal activities.

Crawley also alleged that "Mr. Gibbs picked Harold Lovell because, Carlos [Glass] and myself {didn't} agree with him ... ." Id. The City responded to Crawley's appeal and explained that

3

Gibbs, who is African American, was allowed to make the decision regarding who would receive the promotion because he was the person who knew "the performance of the Water Mains staff better than anyone." 9/3/02 Letter to Pl. Both Crawley and Lovell had been foremen for a number of years; however, as the defendants point out, Crawley's November 2001 letter demonstrates that Gibbs and Crawley had not worked well together. Eventually, on December 10, 2001, Gibbs wrote Crawley up for insubordination. See 12/10/01 Incident Report. The defendants assert that Gibbs chose to promote Lovell to Assistant Supervisor because he had a better working relationship with him.

In 2005, Gibbs retired, leaving the position of Supervisor vacant. The City promoted the Assistant Supervisor, Lovell, to the Supervisor position. L. Horton Dep. at 85. Gibbs, the Head Supervisor, and Bubba Rainer, the Director of Public Works, recommended Lovell for the position. Id. Lovell had three years experience as the Assistant Supervisor and was the only employee who had the requisite Class-D certification.[1] Id. He had been sent by the City to obtain "Class D" water certification. He passed the test and obtained the certification. Lovell Dep. at 74.

---

[1] Effective July 1, 1987, all municipal and domestic water systems were required to be operated by persons certified by the Mississippi State Department of Health as qualified to operate such facilities. See Water Certification Regulation. Lovell's Class-D certification authorized him to operate the Vicksburg Water Department.

After Lovell was promoted to Supervisor, he promoted Crawley to Assistant Supervisor. Lovell Dep. at 40.

Throughout approximately eleven years of his employment, the plaintiff conducted an affair with Deborah Diane Taylor.[2] Walter Erwin's cousin also had a relationship with Taylor. Pl. Dep. at 84-85. Crawley helped Erwin get a job with the water department. Crawley Dep. at 78. According to Crawley, his problems with Erwin began in 2006 when Erwin told some of their co-workers that Taylor, Crawley's mistress, was cheating on him with Erwin's cousin and "making a fool out of" Crawley. Id. at 79-80. Crawley reported the comment to Lovell who spoke with Erwin "and tr[ied] to stop it." Id. at 81. During that same period of time, Crawley's relationship with Taylor soured. Id. at 82. Taylor filed affidavits against Crawley for stalking her, and alleged that Crawley threatened to kill their daughter. Id.; 12/8/06 Affidavit. Erwin also reported to his co-workers that Crawley had threatened to kill his own daughter. Id. In 2007 Crawley's relationship with Taylor ended.

According to the defendants, Crawley's and Erwin's problems with each other then became a daily problem for the water department. During one incident, Crawley became aware that Erwin was on-call and had a water department vehicle at a family member's

---

[2] According to the plaintiff, the affair spanned a total period of twenty-three years. Pl. Dep. at 14.

house – a breach of water department policy.[3]  1/22/07 Disciplinary Action.  Crawley ignored the chain of command and directly contacted the City of Vicksburg's Mayor on a Saturday to report Erwin's actions.  Id.  Crawley's handling of the matter led to yet another "confrontation" with Erwin at the water department on January 22, 2007.  1/24/07 Memo; 2/13/07 Memo.  This altercation became so heated that the police had to be called to separate the two men. 2/13/07 Statement.  On January 24, 2007, Lovell and Lamar Horton, the Human Resources Director, met with Crawley to discuss his ongoing feud with Erwin, his actions on Saturday, January 20, and the January 22 altercation.  1/24/07 Memo.  Crawley was warned that any further breaches of the chain of command or any further altercations between him and Erwin would result in further disciplinary action.  Crawley was asked to keep his personal business personal and to not bring it to work with him.  Id.

After the altercation, tensions remained high, and Crawley had to take off the week of January 29 to February 2 because his blood pressure was extremely high.  Id.  Approximately two weeks later, Crawley went to the Vicksburg Police Department "while on City time in a City vehicle" to ask why Walter Erwin had not been arrested.[4]

---

[3] Erwin received a two-day suspension for improperly using the water department truck.  See Disciplinary Action.

[4] After Crawley had reported Erwin's unauthorized use of a water department vehicle, Erwin allegedly called and threatened Crawley.  Crawley filed an affidavit against Erwin with the Vicksburg Police Department, but Erwin's name was misspelled and

6

2/12/07 Memo. Based on Crawley's erratic behavior and demeanor, the City recommended he seek counseling through the Employee Assistance Program to help him manage his stress. Id. Crawley also was warned that any continued discussion of personal matters at work would result in further disciplinary action. Id.

In the fall of 2007, Crawley once again caused strife in the water department by falsely accusing Lovell of stealing diesel fuel from the department. 10/25/07 Memo. Crawley told another city worker, Malcolm Carson, that Lovell was stealing diesel fuel and taking it to the home of Don Robinson, the former supervisor. Crawley called Carson the Mayor's "baby-sitter" who "repeat[s] what he hear[s]" to the Mayor. Pl. Dep. at 137, 144-45. After Crawley told this story to Carson, Carson and the Mayor went to Crawley's home. The Mayor, Crawley and Carson then drove to the home of the person who allegedly told Crawley that Lovell was stealing diesel fuel. Id. at 145-46. No one could or would support the allegations lodged by Crawley against Lovell. Id. at 148.

In the interim, another water department employee reported to Lovell that Crawley had made "threats to kill him." Lovell Dep. at 65. Crawley had gone to the home of Vance Williams in the early morning hours. Vance Williams later reported that Crawley had threatened to kill Albert Johnson, one of his co-workers. Id.

---

therefore the warrant for his arrest was null and void. See 2/13/07 Memo.

Because the City previously had expressed concern over Crawley's mental well-being, and because Crawley's behavior had become increasingly erratic, Lamar Horton decided that to protect the other water department employees, Crawley needed to be seen by a mental health specialist and to obtain a medical release before he could be allowed to return to work. 10/25/07 Letter.

Crawley went to Innovative Behavioral Services, Inc., on November 12, 2007. 11/12/07 Letter. The psychologist who examined him reported that "we are not releasing Mr. Crawley back to work because of the emotional distress he is currently undergoing." Id. The psychologist did not believe Crawley would be released to return to work until December 3, 2007. Id. According to the Family Medical Leave Act ("FMLA") paperwork submitted by Crawley's psychologist, Dr. Williams, Crawley was unable to return to work "to protect [the] safety of [Crawley] and others." FMLA Documents. On December 4, 2007, Dr. Williams released Crawley to return to work on December 17, 2007. 12/4/07 Letter.

Upon Crawley's return to work from FMLA leave, he and Erwin continued to get into altercations and discuss their personal issues at work. On April 16, 2008, Crawley and Erwin once again had issues while at work, and Crawley told Erwin he was going to a nearby store to wait for him, presumably to fight. 4/16/08 Memo. The two men then went into an office at the water department and yelled at each other for approximately twenty minutes before

8

leaving.  Id.  On April 25, 2008, Lovell met with Erwin and again instructed him to leave his personal issues with Crawley at home or he would be disciplined.  5/7/08 Memo.  Erwin left his meeting with Lovell, went straight to Charles Gladwell, a friend of Crawley, and told him that Crawley had "better watch his back."  4/25/08 Memo.  Erwin was suspended from work for two days and, because he had ignored Lovell's order not to argue over personal issues at work, Erwin was transferred to the Parks and Recreation Department to isolate him from Crawley.  5/7/08 Memo.

On May 1, 2008, after Erwin had been transferred, Lamar Horton gave a final warning to Crawley and instructed him to stop bringing his personal issues to work, or he would be terminated.  5/7/08 Memo.  The plaintiff was not terminated from employment with the water department.  See Complaint, Answer, Motion to Amend Complaint.

On April 22, 2008, Crawley filed a complaint with this Court alleging two causes of action: (1) failure to promote him to "head of the water department" in May of 2005, based on his race, in violation of 42 U.S.C. § 1981; and (2) interfering with, restraining and coercing him for speaking out about matters of public concern, in violation of his First Amendment rights under the United States Constitution, and his rights under the

Mississippi Constitution.[5]  Complaint, ¶¶ 14-15.  No title VII claims are asserted in this case.[6]

The defendants move for summary judgment on all claims.  A grant of summary judgment is appropriate when, viewed in the light most favorable to the nonmoving party "... the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact ... ."  Fed.R.Civ.P. 56(c).  In determining whether there are any genuine issues of material fact, this Court must first turn to the applicable law to discern what factual issues are, indeed, material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Fields v. City of South Houston, Tex., 922 F.2d 1183, 1187 (5th Cir. 1991).  Then, the Court must examine the evidence of the type listed in Rule 56(c) to detect the existence or non-existence of a material issue.  Id., at 1187.  Further, "... summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, at 248.  The Fifth Circuit has added:

---

[5] Both the plaintiff's Complaint and his proposed Amended Complaint refer to "Article 3 of [sic] Section 4" of the Mississippi Constitution.  Section 4 of Article 3 deals with acquisition of territory and disputed boundaries.  The Court assumes that the plaintiff intended to reference Section 13 of Article 3, which deals with freedom of speech.

[6] According to the defendants, Crawley never filed an EEOC Charge of Discrimination.

> Both the Supreme Court and this circuit have addressed, at length, how much evidence the nonmoving party must present. The Supreme Court explained that the standard for granting summary judgment mirrors the standard for a directed verdict. ... "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment ...." ... Nor is the "mere existence of a scintilla of evidence" sufficient .... This circuit has described the amount of evidence the nonmoving party must bring forward as "significant probative evidence." ... This may be equated with the "substantial evidence" standard used to determine whether a directed verdict is appropriate.

State Farm Life Ins. Co. v. Gutterman, 896 F.2d 116, 118 (5th Cir. 1990)(citations omitted).

The moving party bears the initial burden of establishing the absence of genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Lavespere v. Niagara Mach. & Tool Works, 910 F.2d 167, 178 (5th Cir. 1990). Once the burden of the moving party is discharged, the burden shifts to the nonmoving party to go beyond the pleadings and show that summary judgment is inappropriate. Id., at 178; Fields, at 1187. The nonmoving party is obligated to oppose the motion either by referring to evidentiary material already in the record or by submitting additional evidentiary documents which set out specific facts indicating the existence of a genuine issue for trial. Fed.R.Civ.P. 56(e); Fields, at 1187. If the opponent fails in her duty, summary judgment is implicated. Id., at 1187. The United States Supreme Court has also stated that summary judgment is mandated where sufficient time for discovery has elapsed and a

party has failed to establish an essential element of its case upon which it would have born the burden of proof at trial. Celotex, supra, at 322; Washington v. Armstrong World Indus., 839 F.2d 1121, 1122 (5th Cir. 1988).

In Jett v. Dallas Independent School District, 491 U.S. 701, 731 (1989), the Supreme Court held that § 1981 does not provide a separate independent cause of action against local government entities. The Court concluded that plaintiffs must assert a cause of action against state actors under 42 U.S.C. § 1983 to remedy alleged violations of civil rights under § 1981. Id. The Fifth Circuit has repeatedly held that Congress's passage of the 1991 amendment to the Civil Rights Act did not alter the holding in Jett. See Oden v. Oktibbeha County, Miss., 246 F.3d 458, 463-64 (5th Cir. 2001)(plaintiff could not maintain an independent cause of action under § 1981 against County and Sheriff); Felton v. Polles, 315 F.3d 470, 481-83 (5th Cir. 2002)("requiring § 1981 claims against state actors to be pursued through § 1983 is not a mere pleading formality."). In this case, Crawley has asserted an independent § 1981 claim that is not brought pursuant to 42 U.S.C. § 1983. However, in his proposed Amended Complaint he adds the language that the defendants' failure to promote him violates 42 U.S.C. § 1981 "pursuant to U.S.C. § 1983." Proposed Amended Complaint, § 12.

In order to establish a viable § 1981 claim pursuant to §

1983, Crawley must establish a prima facie case of racial discrimination. LaPierre v. Benson Nissan, Inc., 86 F.3d 444, 448 n.2 (5th Cir. 1996)("Claims of racial discrimination brought under § 1981 are governed by the same evidentiary framework applicable to claims of employment discrimination brought under Title VII."); Wallace v. Texas Tech Univ., 80 F.3d 1042, 1047 (5th Cir.1996)("to succeed on a claim of intentional discrimination under Title VII ... or Section 1981, a plaintiff must first prove a prima facie case of discrimination.").

To overcome a motion for summary judgment, the plaintiff must first establish, by a preponderance of the evidence, a prima facie case of racial discrimination. To meet this burden, he must prove: (1) he is a member of a protected group or class; (2) he was qualified for his position; and (3) he was subjected to an adverse employment action (4) because of his race. Shackelford v. Deloitte & Touche, L.L.P., 190 F.3d 398, 404 (5th Cir. 1999); Fields v. J.C. Penney Co., 968 F.2d 533, 536 n.2 (5th Cir. 1992). In support of his race discrimination claim, Crawley asserts a "less qualified white" was hired to head the water department. Complaint, ¶ 5. Crawley offers no facts to support this allegation. It is undisputed that the City did exactly what it had done the previous time the Supervisor position needed to be filled: it promoted the Assistant Supervisor, Lovell, to the Supervisor position. Horton Dep. at 85. Gibbs, the former Supervisor, and Bubba Rainer, the

13

Director of Public Works, recommended Lovell for the position. Id. Lovell received the promotion because he had experience as the Assistant Supervisor and was the only employee who had the requisite Class-D certification. Id. The plaintiff's conclusory allegations and speculation as to racial discrimination are insufficient to survive a motion for summary judgment. Swanson v. Gen. Serv. Admin., 110 F.3d 1180, 1186 (5th Cir. 1997)(noting that bare allegations of racial discrimination are too speculative to create a jury question). Furthermore, when asked why he thought Lovell was promoted over him, Crawley replied that he thought he was being retaliated against because he had reported Don Robinson's illegal activities. Pl. Dep. at 188.

Assuming that Crawley could establish a prima facie case, the burden shifts to the defendants to articulate some legitimate, non-discriminatory reason for the challenged employment action. Pratt v. City of Houston, Texas, 247 F.3d 601, 606 (5th Cir. 2001)(citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)). If such a showing is made, the burden shifts back to the plaintiff to demonstrate that the articulated reason was merely a pretext for discrimination. Id. "At that point, 'the McDonnell Douglas framework – with its presumptions and burdens – disappear[s] and the sole remaining issue [is] discrimination vel non.'" Auguster v. Vermilion Parish School Board, 249 F.3d 400, 402 (5th Cir. 2001) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133,

142-43 (2000)). The ultimate burden of persuading the trier of fact that the defendant discriminated against the plaintiff remains with the plaintiff. Id. In Reeves, the Supreme Court held that evidence of the falsity of the defendant's explanation "may" allow the fact-finder to infer intentional discrimination. Reeves, 530 U.S. at 2108-09. In making this determination, a court should consider "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case ... ." Id. However, such a showing will not defeat summary judgment "if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination occurred." Pratt, 247 F.3d at 606 (quoting Reeves, 530 U.S. at 2109). In the absence of any evidence of discriminatory motive, it is not for a court to decide whether a good-faith business decision was a correct decision or not. Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1091 (5th Cir. 1995).

The defendants have shown that there were ample reasons for the City to take the actions it did. It is undisputed that Lovell had been the Assistant Supervisor and he was the only water department employee with the requisite Class-D certification. Crawley's altercations with Erwin had constantly disrupted the daily activities of Crawley, Erwin and the other water department

employees. It also is undisputed that Crawley and Gibbs did not work well together as evidenced by Crawley's letter complaining about Gibbs and Robinson.

Crawley's only response to these undisputed facts is that he was more qualified and "knew the job." Crawley Dep. at 61-62. Although Crawley argues that his employer's decision was incorrect, he offers no evidence that it was a pretext for discrimination. See Walton v. Bisco Indus., Inc., 119 F.3d 368, 372 (5th Cir. 1997) (discrimination laws are not vehicles for judicial second-guessing of business decisions); Garcia v. Gloor, 618 F.2d 264, 269 (5th Cir. 1980)("[S]ection 1981 do[es] not protect against unfair business decisions – only against decisions motivated by unlawful animus."). Since Crawley does not offer any evidence of pretext, summary judgment is warranted.

As for the plaintiff's First Amendment claim, Crawley asserts that he was required to obtain a mental health evaluation in retaliation for accusing Lovell of stealing diesel fuel. Complaint, ¶ 10. To establish a § 1983 claim of retaliation for the exercise of free speech, Crawley must prove that: (1) his speech was constitutionally protected, i.e., that it involved a matter of public concern; (2) his interest in commenting on matters of public concern outweighs the public employer's interest in promoting efficiency; and (3) his speech was a motivating or substantial factor in the termination decision. Cabrol v. Town of

Youngsville, 106 F.3d 101 (5th Cir. 1997).

The undisputed facts show that the City had legitimate reasons to be concerned about Crawley's mental health. City officials had watched Crawley's altercations with Erwin become more heated. It was reported to Lovell that Crawley had threatened the life of a co-worker. Under the circumstances, the City had no choice but to act to protect both Crawley and his co-workers. Furthermore, the City did not require Crawley to seek treatment, it only required him to obtain a medical release. The psychologist who examined Crawley at Innovative Behavioral Services, Inc., reported that he could not release Crawley because of the "emotional distress he is currently undergoing." 11/12/07 Letter. The psychologist determined that Crawley needed therapy "to protect [the] safety of [the] patient and others." FMLA Documents. Thus, the City's concerns and actions were supported by the findings of the psychologist. Summary judgment is warranted in light of Crawley's inability to show that the City's decision to send him for a mental health evaluation was motivated by his allegations against Lovell. There were legitimate non-retaliatory reasons for the City to be concerned over Mr. Crawley's mental well-being, and the plaintiff has provided no basis for his allegation that the exercise of his First Amendment rights motivated the City's decision; therefore, summary judgment shall be granted.

As for the plaintiff's claim under the Mississippi

Constitution, there is at least a possibility that Mississippi courts would recognize a cause of action under Article 3, Section 13 in this context.  See <u>Claiborne County Board of Education v. Martin</u>, 500 So.2d 981, 985 (Miss. 1986)(recognizing that "public school employees are entitled to exercise rights protected by the First Amendment to the Constitution of the United States and by Article 3, Section 13 of the Mississippi Constitution of 1890 without fear that their employment will be terminated or adversely affected").  However, in the absence of any claim that the Mississippi Constitution provides broader protection than the First Amendment, the plaintiff's state law freedom of speech claim fails for the same reason that his First Amendment claim fails.  See <u>Finch v. Fort Bend Independent School Dist.</u>, 333 F.3d 555, 563 (5th Cir. 2003)(analyzing plaintiff's free speech claims under the United States Constitution where plaintiff did not argue how the broader scope of the Texas Constitution affected her claims).

Because the plaintiff has failed to present any genuine issue of material fact in support of his claims against the defendants, summary judgment is warranted.  Furthermore, because the proposed Amended Complaint does not raise a genuine issue of material fact, the plaintiff's motion to amend shall be denied as futile.  Accordingly,

IT IS HEREBY ORDERED that the motion for summary judgment **(docket entry 38)** filed by the defendants the City of Vicksburg,

Laurence Leyens in his unofficial and official capacity as Mayor, and Sidney Beauman in his unofficial and official capacity as Alderman, is GRANTED;

FURTHER ORDERED that the plaintiff William Crawley, Jr.'s motion to amend complaint **(docket entry 45)** is DENIED.

A final judgment dismissing this case with prejudice shall be entered pursuant to Fed.R.Civ.P. 58(a).

SO ORDERED, this the 8th day of December, 2009.

/s/ David Bramlette
UNITED STATES DISTRICT JUDGE